Filed 8/23/16  P. v. Harris CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRIAN EVERETT HARRIS,<br><br>    Defendant and Appellant. | G052827<br><br>(Super. Ct. No. 14NF3889)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes and Beatriz M. Gordon, Judges.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*   \*   \*

We appointed counsel to represent Brian Everett Harris on appeal.  Counsel filed a brief that provided the facts of the case.  Counsel did not argue against his client, but advised the court he found no issues to argue on his behalf.  We gave Harris 30 days

to file written argument on his own behalf. That time has passed, and Harris has not filed any written argument.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124 (*Kelly*).) Harris did not raise any issues himself.

Pursuant to *Anders v. State of California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel raised the following three issues: (1) whether the trial court erred by denying Harris's motion to represent himself; (2) whether Harris had a plausible self-defense argument; and (3) whether Harris was effectively represented during the trial court proceedings. We have reviewed the record in accordance with our obligations under *Wende* and *Anders,* and the information provided by counsel. We found no arguable issues on appeal. The judgment is affirmed.

FACTS

Late one evening, officers Rafael Orozco and Priscilla Owens responded to a call and spoke with Erica Turner. Turner was bleeding profusely down her neck and chest area. Turner suffered a stab wound to the left side of her neck. The treating doctor said the stab wound did not hit any arteries but went through all the layers of muscle.

Turner said a man by the name of "No Good" had been calling her wanting to retrieve his clothes that he had left in her motel room. She described the person as a thin black male from Ethiopia, about five foot seven inches tall. Later that evening, Turner answered her phone and told Harris that she would meet him and give him his

2

clothes. When Turner met with Harris she gave him his backpack, but he complained there was stuff missing.

Later that evening, Turner walked out with another bag of clothing for Harris, but when they met they got into an argument. Harris had an eight-inch black knife in his hand. Turner tried to kick the knife out of Harris's hand and kicked him in the groin. Harris dropped the knife and Turner tried to pick it up, but Harris grabbed the knife first and made a slashing or stabbing motion at her, which cut her neck.

Orozco spoke with Jay Bueno who told him that he was staying at the Shadow Park Inn with his friend Turner when they decided to walk to the store. As they approached the sidewalk, Turner had a verbal altercation with Harris. Harris produced a knife and jabbed at Turner in the upper torso with a locking knife about four inches in length and Harris left the scene. Harris also told Bueno, "I'm going to fuck you up."

An information charged Harris with attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a); all further statutory references are to the Penal Code) (count 1), and aggravated assault (§ 245, subd. (a)(1)) (count 2). The information alleged Harris personally used a deadly weapon during the commission of count 1 (§ 12022, subd. (b)(1)), and he personally inflicted great bodily injury (GBI) during the commission of counts 1 and 2 (§ 12022.7, subd. (a)). The information also alleged Harris had suffered a serious and violent strike conviction (§§ 667, subds. (a)(1), (d) & (e)(1), 1170.12, subds. (b) & (c)(1), and two prior prison terms (§ 667.5, subd. (b)).

Prior to the preliminary hearing, Harris filed a motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). Harris submitted a *Farreta* waiver form and Judge Beatriz M. Gordon reviewed the form with him in open court. The form listed a number of facts relating to self-representation. For each fact there was a place for the defendant to indicate whether he had considered the fact by answering "Yes" or "No." After reviewing Harris's completed form, the court noted Harris had entered a significant number of "no" answers. The court advised Harris that because the

3

form indicated he had not considered a number of important facts, it could not find he was making a knowing and intelligent waiver of his right to counsel. The court allowed Harris to review the form a second time and amend his answers as appropriate.

When he resubmitted the *Farreta* waiver form, the court asked Harris if he had now considered all the facts listed on the form and he said he had. On the form Harris indicated he had previously represented himself in jury trial. When the court asked when he had represented himself, Harris responded, "I'm not too familiar with that." The court then asked, "You can't remember when you represented yourself in front of a jury before?" Harris responded, "This is my first time." The court inquired further, "This is your first time? But in your paperwork, you said you've already represented yourself before a jury." Harris simply answered, "No." The court said, "Sir, I have now talked to you twice about this, and I've reviewed your answers to these questions twice, and I don't believe that you fully understand the information that is set forth in this paperwork." The court concluded it could not find Harris was making a knowing, voluntary, and intelligent waiver to his right to counsel. The court denied the *Faretta* motion without prejudice.

Harris subsequently pleaded guilty to count 2, admitted the GBI allegation, and admitted he suffered a prior conviction and served two prior prison terms. He did so based on the condition he be sentenced to 10 years. The factual basis in the guilty plea form read as follows: "In Orange County, California, on 9-15-14, I did willfully and unlawfully commit an assault upon the person of Erica T. with a knife that resulted in me personally inflicting great bodily injury on Erica T." Prior to accepting the plea, Judge W. Michael Hayes asked the prosecutor to review the plea agreement with Harris. The prosecutor specifically asked Harris if the factual basis was true and correct, and he responded it was. Harris also indicated he was pleading guilty freely and voluntarily because he was, in fact, guilty.

The maximum sentence Harris could receive was 12 years. The trial court sentenced Harris to a total prison term of 10 years as follows: the low term of two years for count 2; a consecutive term of three years for the GBI enhancement; and a consecutive term of five years for the serious prior felony conviction. The court struck the strike prior and the prison priors for sentencing purposes. Harris filed a timely notice of appeal, and the trial court granted a certificate of probable cause.

DISCUSSION

Although presented as three issues, counsel essentially raises the following two issues: whether the trial court erred by denying Harris's *Faretta* motion; and whether Harris received ineffective assistance of counsel. We will address them anon.

*Faretta Motion*

The United States Supreme Court in *Faretta, supra*, 422 U.S. 806, held that under the Sixth and Fourteenth Amendments a criminal defendant has a constitutional right to conduct his own defense subject to the trial court's determination the defendant's decision to represent himself is voluntarily and intelligently made. In *People v. Windham* (1977) 19 Cal.3d 121, 127-129, our Supreme Court held a trial court must permit a defendant to represent himself upon ascertaining he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be. Based on the record before us, we find no error.

*Ineffective Assistance of Counsel*

Counsel questions whether Harris had a plausible self-defense argument and whether Harris was effectively represented during the trial court proceedings. These questions are essentially a claim of ineffective assistance of counsel.

""To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing

5

professional norms.  [Citation.]  Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93.)

The record in this case is minimal because Harris entered a guilty plea and admitted he suffered a prior conviction and two prison priors.  Nothing in the record suggests Harris had a plausible self-defense claim.  The record demonstrates an unprovoked attack.  While the victim was in the process of returning a bag of clothing to him, Harris began arguing with her and ultimately Harris produced a knife and slashed at the victim cutting her in the neck.  Nor does the record reflect Harris was not effectively represented during the trial proceedings or that he was prejudiced.  In fact, the plea agreement resulted in a reduced sentence for Harris.  Accordingly, we find no error.

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.


6